Filed 2/28/24  P. v. Picasso CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082350 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD296717) |
| ALBERTO PICASSO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Alberto Picasso of seven different offenses including driving a vehicle without consent (Veh. Code, § 10851, subd. (a)); fraudulent possession of identification materials (Pen. Code,[1] § 530.5, subd. (c)(1));

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

possession of burglary tools with intent to break into a home, building or vessel (§ 466); possession of a stolen vehicle (§ 496d); and petty theft (§ 484). Picasso admitted two aggravating factors within the meaning of California Rules of Court, rule 4.421(b)(3).

The court struck the true finding on the strike prior (§ 667, subds. (b)-(i)). Picasso was sentenced to a term of nine years in prison.

Picasso filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks the court to independently review the record for error as mandated by *Wende*. We offered Picasso the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

Appellate counsel has provided a detailed summary of the facts of the various offenses. We will incorporate the summary into this opinion.[2]

At about 9:00 p.m. on May 2, 2022, D.V. parked his 1990 Acura outside his home. The next morning, he found the car was gone and the keys were still in his possession. He did not know Picasso and did not give him permission to take or drive his car.

On May 4, 2022, Officer Ibarra was on patrol when he noticed a 1990 Acura driving well below the speed limit. He ran a search, learned the car was stolen, and made a traffic stop. Once other officers arrived, Ibarra ordered the driver to exit the car. Picasso, the driver and sole occupant of the car, was compliant.

---

[2]    We have partially redacted the names of witnesses in the interest of privacy.

During an inventory search of the Acura, the officers found a backpack with personal identifying information that did not belong to Picasso. The information consisted of pieces of mail for six people and one vehicle registration for a 1992 Honda, which was registered to Rafael V. The Acura had a key in the ignition, which appeared to Ibarra to be a generic key that could be copied or created, but it was not shaved down.

When Picasso was searched, the officer found one single ammunition on his person, a .44 magnum caliber Remington. He also found multiple keyrings and keys, including an Audi key and a mailbox key.

On September 26, 2022, D.S. went to work in her white 2000 Honda CR-V. At about 6:00 a.m. the next day, she found that her car was gone and she still had the keys. D.S. got the car back two or three weeks later, but it was filthy and parts were missing.

At around 9:00 p.m. on September 28, 2022, E.M. parked his silver 2000 Honda CR-V outside his brother's residence. At 4:00 a.m. on September 29, 2023, he found the car was missing, and he still had the key in his possession. He did not know Picasso or give him permission to take or drive his car or possess any of his information. When E.M. received the car back, it was in bad condition, would not run, was missing some parts, had syringes in it, and had been painted.

On October 2, 2022, M.H. was approaching her 2008 Chevrolet Malibu while carrying her 7-month-old son when she saw Picasso inside and a woman in the driver's seat of a silver Honda CR-V about 30 feet away excessively honking at him. Picasso then got out of the Malibu and said he thought the Malibu was his friend's car. A verbal altercation ensued between M.H. and Picasso.

Picasso told M.H. he had her backpack, then went to the Honda and got the backpack. M.H. testified that it was actually her son's diaper bag. They argued and M.H. photographed Picasso and called the police.

M.H. saw her car diagnostic reader on the front passenger seat in the Honda CR-V and took it back. After she called the police, M.H. discovered that her Versace prescription sunglasses and her Michael Kors watch that were in the car were also missing. At some point, Picasso got into the Honda CR-V with the female driver and they drove off together.

On October 5, 2022, M.M. was at home when he noticed a white Honda CR-V pull up across the street. He saw a male driver and female passenger inside. The man and woman got out of the car and both had large backpacks on. They walked down the block, then quickly turned and went into a condemned, abandoned house.

Officers Fernandez and Kafkas soon arrived on the scene to investigate a stolen white Honda CR-V. Fernandez located the vehicle when they arrived. Kafkas was notified that the suspects were inside a house.

Officers ordered the suspects out of the house and within five minutes, a woman came out of the house followed by Picasso. Picasso was detained and the officers conducted a curbside lineup. M.M. identified Picasso as the driver of the car.

Officer Fernandez searched Picasso and his backpack. He found a bump key, which is a key that is shaved down and can pick locks.

Around 11:00 p.m. on October 29, 2022, L.C. parked his work truck, a GMC Yukon, in front of his house. About 20 minutes later, he and his girlfriend, O.S., discovered the vehicle was gone. L.C. still had both sets of keys. O.S. had left her wallet with her identification and cards inside the Yukon.

O.S. called the non-emergency police number to report it and was put on hold. L.C. called his boss and told him about the vehicle. The vehicle had a GPS locator and L.C.'s boss told him the vehicle was nearby, so L.C. and O.S. got into another vehicle and went looking for it. They drove to a gas station and located the vehicle.

L.C. blocked the exit, jumped out of the car and saw a woman in the Yukon driver's seat shift over to the passenger seat. L.C. and O.S. saw Picasso standing by the back of the vehicle with a backpack on. O.S. went to the passenger side and asked the woman sitting in the passenger seat what she was doing in their vehicle.

L.C. ran to the Yukon and took the key from the ignition. The key was a shaved master key. Everything was rummaged through in the Yukon. L.C. asked Picasso if he took the vehicle and if he was the one driving; Picasso said no.

The woman jumped out of the Yukon with O.S.'s purse and O.S. went after her. The two women were screaming and fighting. Everything in O.S.'s purse went flying out. O.S. got her purse with credit cards back, and the other woman then kept running. L.C. was picking things up that came from the purse and saw Picasso had stuff in his hands, including a credit card. L.C. asked what he was doing with it; Picasso said it was not his and handed it to L.C.

O.S. got the empty wallet back from the woman, then saw Picasso with cards from the wallet, including O.S.'s debit card, driver's license, Medicaid and insurance cards and L.C.'s credit card. O.S. testified that she snatched the cards from him.

Officers Ryan and Russ received a radio call about a stolen blue GMC Yukon in progress at a gas station, and they responded. When they arrived

at the gas station, Ryan saw Picasso between the gas pump and the open driver's door. The officers turned on their emergency lights, and Picasso started to walk away. Two people at the gas station, L.C. and O.S., flagged the officers down and directed them toward Picasso. The officers tried to get Picasso to stop by announcing themselves as police, but he kept walking away. They were able to walk up and place him in handcuffs without incident.

During a search of the vehicle, Officer Ryan found shaved keys. The officers found other keys and various tools such as screwdrivers and pliers in the backpack Picasso was carrying. Picasso also had a AAA card for E.M. (the owner of the silver 2000 Honda CR-V), a paycheck dated from 2009 for G.G., mail for G.G., a paycheck for C.C., a pay stub for R.F., an earnings statement for T.Q., a debit or credit card for F.S., a credit card application for K.V., a $400 check to someone with the last name Schamel, a Covid vaccination card and health insurance card for O.S., a multi tool, a couple of earrings, miscellaneous mail, and a list of individuals' names and phone numbers.

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified one possible issue which was considered in evaluating the potential merits of this appeal: Whether there was sufficient evidence to support the conviction for count 1 (Veh. Code, § 10851, subd. (a)).

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Picasso on this appeal.

6

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.